UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
MAYRA CRUZ and RAUL HERRERA,                     :
individually and on behalf of all other similarly    :
situated persons,                                    :
                                                     :
                             Plaintiffs,          :     **DECISION AND ORDER**
                                                     :
             -against-                            :     22-CV-7520 (AMD) (PK)
                                                     :
ULTIMATE CARE, INC.,                                 :
                                                     :
                             Defendant.          :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

       Mayra Cruz and Raul Herrera (together, "Plaintiffs") brought this action, on behalf of themselves and all other similarly situated persons, against Ultimate Care, Inc. ("Defendant"), seeking relief based on Defendant's alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL") §§ 650 *et seq.* (*See* Am. Compl., Dkt. 48.) Before the Court is Plaintiffs' motion to have this matter proceed conditionally as a collective action, pursuant to 29 U.S.C. § 216(b), and to approve and authorize the dissemination of their proposed notice advising members of the collective of their right to opt in to this action. (Plaintiffs' Motion for FLSA Conditional Certification and Issuance of Notice to the Collective ("Motion"), Dkt. 49.) Defendant opposes the Motion.

       For the reasons stated herein, the Motion is granted with slight modifications to the proposed notice and consent to sue forms, as noted below.

## BACKGROUND

      Defendant is a licensed home care services agency that provides home healthcare services to elderly, ill, and disabled individuals. (Compl. ¶ 16; *see, e.g.*, Declaration of Mayra Cruz ("Cruz Decl.") ¶ 3, Dkt. 49-12.) To care for its patients, Defendant hired home health aides ("HHAs"), such as

1

Plaintiffs.  (*See* Compl. ¶¶ 4, 16-17; Cruz Decl. ¶ 2.)  Defendant's HHAs had the "same job responsibilities" which included assisting with everyday activities such as bathing, using the restroom, and getting dressed; helping with household chores such as doing laundry and running errands; and providing basic patient care such as transferring patients from location to location and reminding patients to take medications.  (Cruz Decl. ¶¶ 10-11; *see* Compl. ¶¶ 26-27.)  Plaintiffs worked as live-in HHAs who worked multiple 24-hour shifts a week, during which they remained in the patients' residences for 24 hours.  (Compl. ¶¶ 32-34, 36, 39; *see, e.g.*, Cruz Decl. ¶¶ 7, 29.)

Defendant paid its live-in HHAs minimum wage for 13 hours of each 24-hour shift worked; they were not paid for 11 of the 24 hours despite being required to remain in patients' residences for the full 24 hours.  (Compl. ¶¶ 35, 37; *see, e.g.*, Cruz Decl. ¶ 29.)  This was because HHAs were allotted eight hours of unpaid sleep time, five of which were to be uninterrupted, and three hours of unpaid mealtime per 24-hour shift.  (Compl. ¶ 57; *see, e.g.*, Cruz Decl. ¶ 19.)  The plans of care that Defendant implemented for its patients, however, did not provide for an eight-hour sleep period.  Instead, HHAs "were forced to sleep when able, at different times each shift, depending upon the circumstances that existed each shift."  (Compl. ¶¶ 42-43; *see, e.g.*, Cruz Decl. ¶ 18-22.)  In fact, it was "common knowledge among Ultimate Care employees that home health aides did not sleep through the night, and that was a basic part of the job."  (Compl. ¶ 54.)  Moreover, HHAs did not actually receive three hours of mealtime, as they "regularly worked through or during [their] meal breaks."  (Compl. ¶¶ 75-77, 79-80, 82; Cruz Decl. ¶ 14-16.)

HHAs clocked in and out of their shifts and logged tasks they completed using a phone reporting system, and, thereafter, a phone application.  (Compl. ¶¶ 60-61, 97; *see, e.g.*, Cruz Decl. ¶ 12.)  The reporting system and the application did not have codes for sleep or meal periods, leaving HHAs without a means of reporting interrupted sleep or meal periods.  (Compl. ¶¶ 62, 81, 84, 99; *see, e.g.*, Cruz Decl. ¶ 13.)  As a result, HHAs complained to their supervisors about working through these

breaks. (Compl. ¶¶ 65-67, 85, 101; *see, e.g.*, Cruz Decl. ¶ 26.) However, Defendant made no changes to ensure that it accurately tracked HHAs' actual hours worked. (Compl. ¶¶ 67, 101; *see, e.g.*, Cruz Decl. ¶ 26.)

Despite knowing that its HHAs worked through their allotted sleep and mealtime periods, Defendant did not pay them for any portion of their interrupted sleep and mealtime periods. (Compl. ¶¶ 56, 74, 78, 82-83; *see, e.g.*, Cruz Decl. ¶¶ 16, 24-26.) Moreover, taking into account these unpaid hours, HHAs regularly worked over 40 hours per week, but were not paid overtime wages for hours worked over 40. (Compl. ¶¶ 86-96; *see, e.g.*, Cruz Decl. ¶ 27.)

## DISCUSSION

### I. Conditional Certification of Collective Action

#### A. *Legal Standard*

The FLSA permits employees to assert claims on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). Approval of a collective action requires two steps. *See D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21-CV-3334 (JMW), 2023 WL 4838156, at *8 (E.D.N.Y. July 28, 2023) (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). First, at the conditional certification stage, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. Second, typically after the completion of discovery, the Court makes renewed factual findings to determine whether "the plaintiffs who opted in are actually similarly situated to the named plaintiffs." *D'Angelo*, 2023 WL 4838156, at *8 (citation omitted).

The Motion concerns only the first step. At this stage, a plaintiff has a "low burden to 'make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated law." *Lopez v. Paralia Corp.*, No. 16-CV-6973 (SLT)(PK), 2018 WL 582466 (E.D.N.Y. Jan. 26, 2018) (citing *Myers*, 624 F.3d at 555). "Prospective members of the collective need

3

not be identically situated to the named plaintiff or to each other." *Ruiz v. Nationwide Ct. Servs., Inc.*, No. 18-CV-6559 (LDH)(RML), 2021 WL 1108635, at *2 (E.D.N.Y. Mar. 23, 2021). Indeed, "the issue of 'similarly situated' refers not to similarity of job duties, but to similarity in pay structure." *Walston v. Edward J. Young, Inc.*, No. 15-CV-457 (LDW)(AYS), 2016 WL 3906522, at *5 (E.D.N.Y. Feb. 22, 2016). Although this modest factual showing must be "based on some substance," it remains "a low standard of proof." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 443 (S.D.N.Y. 2012) (citations omitted); *see also Myers*, 624 F.3d at 555. This burden can be met "by relying on [a plaintiff's] own pleadings and affidavits, or affidavits of potential members of the collective action." *Anjum v. J.C. Penney Co.*, No. 13-CV-460 (RJD)(RER), 2015 WL 3603973, at *5 (E.D.N.Y. June 5, 2015) (internal quotation marks and citations omitted); *see also Walston*, 2016 WL 3906522, at *5 ("it is well-recognized that the burden at the conditional certification stage is so low that Plaintiff's lone affidavit setting forth a common payment scheme may suffice"). "At this point in the litigation, the court may not consider defendant['s] factual denial of plaintiff[s'] allegations," as it is "well settled that at this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Ruiz*, 2021 WL 1108635, at *2 (cleaned up).

### B. Analysis

Plaintiffs seek to conditionally certify a collective comprised of:

> All current or former home health aides employed by Ultimate Care, Inc. who worked two or more 24-hour shifts in one or more weeks at any time within the three years preceding the filing of a consent to sue, and worked through meal and/or sleep periods but were not paid for the time.

(Pls. Mem. at 1, Dkt. 49-1.) Plaintiffs assert that they have satisfied their burden by submitting their own declarations and the declarations of 13[1] opt-in plaintiffs corroborating their allegations that they

---

[1] Plaintiffs submitted 14 declarations with the Motion, but in their Reply ask the Court to disregard the declaration of Rufina Camacho, who they concede did not work for Defendant and whose declaration was submitted in error. (Pls. Reply at 1 n.1, Dkt. 62.)

4

"were all victims of Ultimate Care's policy or plan that denied them overtime wages for hours worked during meal and sleep periods."[2] (Pls. Mem. at 9-11.) These declarations contend that Plaintiffs and other HHAs performed the same job duties, worked multiple 24-hour live-in shifts during the workweek, were paid New York minimum wage for 13 of those 24 hours and were not paid for the remaining 11 hours, were not scheduled sleep periods by Defendant, were not tracked by Defendant with respect to whether they took sleep and/or meal breaks, were not provided a method of recording whether they took meal and/or sleep breaks, worked during their meal breaks and/or sleep periods but were not paid for that work, frequently worked over 40 hours each week without being paid overtime, and complained to their supervisors about their working through sleep and meal breaks but were ignored. (*See, e.g.*, Cruz Decl. ¶¶ 7, 10-21, 24-27, 29; Declaration of Nayra Bernardez ("Bernardez Decl.") ¶¶ 7, 10-20, 22-25, 27-28, Dkt. 49-9.) In addition, Plaintiffs have submitted paystubs given by Defendant to some of the HHAs corroborating the declarations' assertions and indicating that they were paid in a similar manner. (*See, e.g.*, Ex. A to Bernardez Decl. at 12 (ECF pagination), Dkt. 49-9; Ex. A to Declaration of Raul Herrera ("Herrera Decl.") at 11 (ECF pagination), Dkt. 49-15.)

Defendant contends that the collective should not be certified. First, Defendant asserts that Plaintiffs have "failed to identify any illegal policy or practice" making it liable under the FLSA, arguing that its policies with respect to HHAs set forth in its employe handbook comport with law. (Def. Mem. at 5-6.)

"At the conditional certification stage, courts should not weigh the merits of the underlying claims." *Severino v. Avondale Care Group, LLC*, No. 21-CV-10720 (LGS)(SDA), 2022 WL 16555372, at

---

[2] To the extent that some declarations were provided by HHAs whose claims may fall outside the FLSA statutory period, they are still relevant in demonstrating Defendant's unlawful policy or plan. *See Rosario v. Valentine Ave. Discount Store, Co., Inc.*, 828 F. Supp. 2d 508, 515-16 (E.D.N.Y. 2011) ("Affidavits of workers whose employment falls outside the statutory period 'are probative of employer's wage and hour practices and they may corroborate the claims of more recent violations'") (citing *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755 (ILG)(RLM), 2011 WL 317984, at *5 (E.D.N.Y. Feb. 1, 2011)).

\*1 n.1 (S.D.N.Y. Oct. 29, 2022) (internal quotation marks and citations omitted). This principle is highlighted by the fact that, in their Reply, Plaintiffs contest Defendant's claim, contending that those policies were only implemented starting in 2022. (Pls. Reply at 1-2, Dkt. 62.) On this limited record, the Court is not in a position to "resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations." *Severino*, 2022 WL 16555372, at \*1 n.1 (citation omitted).

Next, Defendant asserts that Plaintiffs have failed to meet their burden of showing that they are similarly situated to putative collective members with respect to the alleged FLSA violations. Defendant argues that because the issue of whether each HHA "received adequate sleep or meal periods depended upon each patient's condition and plan of care," a "particularized analysis for each HHA and each patient is required, which means that collective treatment is plainly unworkable and improper." (Def. Mem. at 6.) Moreover, Defendant claims that "resolution of Plaintiffs' claims would require thousands of highly individualized, fact-intensive inquiries for *each* shift worked by *each* of Ultimate Care's HHAs." (*Id.* at 8-9) (emphasis in original.)

The "relevant issue here is not whether Plaintiff[s] and potential opt-in plaintiffs are identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week." *Rieske v. Govt. Emps. Ins. Co. Inc.*, No. 21-CV-4122 (JMA)(AYS), 2022 WL 17127745, at \*7 (E.D.N.Y. Nov. 22, 2022) (cleaned up). Plaintiffs are "only seeking conditional certification and thus, a fact-intensive inquiry is inappropriate at the notice stage." *Id.* (internal quotation marks and citation omitted).

The Court finds that Plaintiffs have made their modest showing that the employees in the putative collective were subject to the same policies with respect to Defendant's failure to pay wages for hours worked during meal and sleep periods and overtime wages for all hours worked in excess of 40 per week. *See Severino* 2022 WL 16555372, at \*3 ("Plaintiffs filed with the Court 20 Declarations from Defendant's employees that reflect the uniformity of their experience working for Defendant

6

and how they are similarly situated to the named Plaintiffs"); *Taveras v. York Healthcare, LLC*, No. 17-CV-6172 (CBA)(CLP), 2018 WL 10517523, at *5-6 (E.D.N.Y. Sept. 19, 2018) (conditionally certifying collective of HHAs where "plaintiff's Declaration indicating that there are aides of whom she is aware who are paid in a similar manner is supported by defendants' own [pay] records").

Defendant argues that, if the Court conditionally certifies the collective, it should not send notice to those HHAs who signed arbitration agreements. However, "the weight of law in this Circuit holds that a collective may be conditionally certified, and notice given, notwithstanding that some or all of the prospective members of the collective may have signed arbitration agreements." *Zambrano v. Strategic Delivery Sols., LLC*, No. 15-CV-8410 (ER), 2021 WL 4460632, at *10 (S.D.N.Y. Sept. 28, 2021) (collecting cases); *see also Severino*, 2022 WL 16555372, at *3 (same). Plaintiffs contest the enforceability of the instant arbitration agreements. (*See* Pls. Reply at 2 n.3.) Thus, the validity and applicability of those agreements must still be decided by the Court. "Whether an opt-in is precluded from pursuing his or her claim by virtue of their signing an arbitration agreement is premature at this stage." *Castillo v. Perfume Worldwide Inc.*, No. 17-CV-2972 (JS)(AKT), 2018 WL 1581975, at *12 (E.D.N.Y. Mar. 30, 2018); *c.f. McLean v. Cornucopia Logistics, LLC*, No. 19-CV-864 (JS)(AYS), 2021 WL 3709260, at *5 (E.D.N.Y. Aug. 20, 2021) ("where, as here, it is undisputed that arbitration agreements executed by all employees are valid and binding" it "would waste everyone's time and resources to conditionally certify a group of individuals that the Court is virtually certain to decertify at step two") (internal quotation marks and citation omitted). Accordingly, the Court does not limit the recipients of notice on this ground.

## II. Proposed Notice and Consent Form

"Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains broad discretion over the form and content of the notice." *Severino*, 2022 WL 16555372, at *3 (internal quotation marks and citation omitted). "When exercising its broad discretion to craft

appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions and ensure that putative plaintiffs receive accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* (internal quotation marks and citation omitted).

After Plaintiffs incorporated Defendant's proposed revisions to the notice, the parties largely agree on the substance of the Revised Notice (Ex. 1 to Declaration of Anamaria Segura[3] at 2-5, Dkt. 62-2 (ECF pagination)). (*See* Pls. Reply at 8.) The following issues remain disputed: the notice period, the means of notice, the information sought by Plaintiffs, the reminder notice, and the consent to sue form. (Def. Mem. at 13-17.)

### A. *Notice Period*

Under the FLSA, the statute of limitations is ordinarily two years, unless the claim arises from a willful violation, which extends the period to three years. *See* 29 U.S.C. § 255(a). "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Diaz v. Weinstein Landscaping*, No. 19-CV-6050 (JMA)(ST), 2022 WL 801493, at *6 (E.D.N.Y. Feb. 28, 2022) (citation omitted). Here, the three-year statute of limitations under the FLSA applies because the Amended Complaint alleges that Defendant's conduct was willful (*See, e.g.*, Am. Compl. ¶¶ 97-102, 110, 115). *See Jimenez v. S.O.S. Maint. Inc.*, No. 23-CV-1177 (GRB)(JMW), 2023 WL 4054521, at *7 (E.D.N.Y. June 16, 2023).

Plaintiffs request that the Court authorize them to send notice to all HHAs who worked for Defendant "within the six years prior to filing of the original complaint," given that this case involves NYLL claims which have a six-year statute of limitations. (Pls. Mem. at 12 n.30; Pls. Reply at 5.) Defendant opposes this request, instead arguing that the Court should allow notice to be sent only to

---

[3] The Declaration of Anamaria Segura (Dkt. 62-1) is hereinafter referred to as "Segura Decl. II"

8

those HHAs whom it employed in the three years preceding the date of this Order.  (Def. Mem. at 13-14.)

"Courts in this Circuit are split on the appropriateness of adopting the NYLL's six-year limitations period for the purpose of sending FLSA notice to a group of opt-in plaintiffs."  *Thornburn v. Door Pro America, Inc.*, No. 16-CV-3839 (DRH)(AKT), 2018 WL 1413455, at *10 (E.D.N.Y. Mar. 20, 2018) (cleaned up).  Some courts have found that "judicial economy is best served by a six-year statute of limitations where *both* FLSA and NYLL claims are involved."  *Jimenez*, 2023 WL 4054521, at *7 (collecting cases) (emphasis in original).  However, the more recent trend followed in this district is to allow only a three-year period to "avoid the confusion caused by notifying plaintiffs who potentially have two disparate claims under federal and state wage and hour laws with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred under the FLSA."  *Id.* (internal quotation marks and citations omitted).  The Court agrees with the latter rationale, particularly because Plaintiffs are moving at this stage for conditional certification of their FLSA claims, but not for class certification under Fed. R. Civ. P. 23 for their NYLL claims.  *See id.* (finding three-year period "more persuasive especially since Plaintiff has moved for conditional certification of only her FLSA claim") (citation omitted).

With respect to the date from which the statute of limitations period should be calculated, "courts often begin counting back from the date of the conditional certification order or the notice since the statute of limitations on FLSA claims continues to run until a plaintiff consents to join the action."  *Thornburn*, 2018 WL 1413455, at *11 (citations omitted).  "However, because equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date."  *Id.* (cleaned up); *see Barry v. S.E.B. Serv. of N.Y., Inc.*, No. 11-CV-5089 (SLT)(JMA), 2013 WL 6150718, at *10 (E.D.N.Y. Nov.

9

22, 2013) (it is "well within my discretion to key the three-year notice period to the service of plaintiffs' motion" allowing "opt-ins to preserve claims that equitable tolling may cover, and the Court can make a definitive ruling on the propriety of equitable tolling down the road").

Accordingly, any notice authorized by the Court should be sent to those HHAs who worked for Defendant on or after December 12, 2019, the three years preceding the filing of the original complaint. All materials disseminated to putative class members should be amended to reflect this date, and references to HHAs that worked for Defendant in the last "six years" shall be changed to "three years."[4]

### B. *Means of Notice*

Plaintiffs request that the Court authorize them to provide notice to putative collective members by mail, text message, and WhatsApp messaging. (Motion at 1; Pls. Mem. at 13-14.) They state that notice via text message and WhatsApp "is an efficient and inexpensive way to give notice and may reach some class members who have changed their physical address, are away from home, or are out of the country." (Pls. Mem. at 14.) In particular, counsel notes that "one of the most effective methods in communicating with our clients in this case is by using the social media application WhatsApp." (Segura Decl. II ¶ 5.)

Defendant opposes the request to provide notice via text message and WhatsApp, stating that Plaintiffs "have provided no particularized basis concerning why dissemination via text and Whats App [sic] messaging is warranted." (Def. Mem. at 15.) Defendant also argues that allowing Plaintiffs to provide notice in multiple forms ignores "the disruption to Ultimate Care's business [and] the expense involved." (*Id.*) Moreover, Defendant asserts that because Plaintiffs are also seeking skip-tracing if mailed notices are returned as undeliverable, any additional notice is redundant. (*Id.* at 15-16.)

---

[4] Changes to any form of notice must be implemented to both the English and Spanish versions.

"Objections to notice by . . . text message are quite outdated and not in touch with the reality of current life in the United States of America." *Valdez, v. MichPat & Fam, LLC*, No. 20-CV-2570 (AMD)(SIL), 2022 WL 950450, at *15, (E.D.N.Y. Mar. 30, 2022) (internal quotation marks and citation omitted); *see also Millin v. Brooklyn Born Chocolate, LLC*, No. 19-CV-3346 (ENV)(RER), 2020 WL 2198125, at *3 (E.D.N.Y. May 6, 2020) ("There is no credible reason why notice should not be provided by email or text message, especially given the broad remedial purpose of the FLSA . . . text message and other electronic means of communication is far more prevalent than snail mail"). Defendant has not articulated a convincing burden imposed upon it by permitting Plaintiffs to disseminate notice by text message and WhatsApp to putative collective members. It does not state what "disruption" such method of notice would cause to its business. In light of the fact that "[e]lectronic messaging in addition to first class mail reasonably furthers the purpose of notice of a collective action under the FLSA," the Court permits Plaintiffs to disseminate the Revised Text Message and WhatsApp Notice (Ex. 2 to Segura Decl. II at 1, Dkt. 62-3), via text message and WhatsApp. *Valdez*, 2022 WL 950450, at *15 (cleaned up).

### C. Information Sought

Plaintiffs seek from Defendant a spreadsheet, in electronic format such as Excel, containing the first and last name, full address, telephone number, employee number, and New York State Department of Health ("NYSDOH") HHA Registry Number for each putative collective member. In addition, Plaintiffs seek the partial Social Security number and date of birth of putative collective members whose notices are returned without a forwarding address. (Pls. Mem. at 12-13; *see* Motion at 1.)

Defendant agrees to provide the first and last name and full address of each putative collective member and the partial Social Security number and date of birth of putative collective members whose notices are returned without a forwarding address. (Def. Mem. at 14-15, 16 n.4.) However, Defendant

11

objects to providing Plaintiffs with telephone numbers, employee numbers, and HHA registry number, arguing that they are "not necessary to distribute notice." (Def. Mem. at 15.)

The Court finds unconvincing Defendant's conclusory assertion that "telephone numbers . . . are not necessary to distribute notice" (Def. Mem. at 15), and it has found that disseminating notice by text message and WhatsApp is appropriate. (*See supra* Sec. II.B.) To do so, Plaintiffs require the telephone numbers of putative collective members. Thus, Defendant must provide Plaintiffs with the telephone numbers of all putative collective members.

Regarding putative collective members' employee numbers and NYSDOH HHA Registry numbers, the Court agrees with Plaintiffs that utilizing these numbers is helpful "to distinguish between opt-ins with similar names." (Pls. Reply at 6.) Defendant fails to identify any undue burden imposed upon them by providing this information. Accordingly, Defendant must provide Plaintiffs with employee numbers and any available NYSDOH HHA Registry numbers for all putative collective members.

### D. Reminder Notice

Plaintiffs request that the Court order that Plaintiffs be allowed to issue a reminder notice to putative plaintiffs "who have not responded within 30 days" of the dissemination of the Revised Notice. (Motion at 1; Pls. Mem. at 15.) Defendant opposes this request. The Court agrees with Plaintiffs that they should be allowed to disseminate reminder notices. *See Valdez* 2022 WL 950450, at *16 ("Courts in this district have routinely authorized such reminder notices") (internal quotation marks and citations omitted).

Defendant argues if a reminder notice is sent, it "should be in a mutually agreed-upon form and state that the Court is neither encouraging nor discouraging participation in the lawsuit." (Def. Mem. at 16.) Defendant proposes its own reminder notice (Ex. C to Declaration of Peter C. Godfrey[5]

---

[5] The Declaration of Peter C. Godfrey (Dkt. 55-12) is hereinafter referred to as "Godfrey Decl."

(("Defendant's Reminder Notice") at 2-4 (ECF pagination), Dkt. 55-15) and asserts that Plaintiffs' proposed reminder notice ("Reminder Notice" at 3, Dkt. 49-4) "confusingly conflates the federal and state claims in the lawsuit and improperly characterizes the consequences if a claimant elects not to opt-in to the Collective." (Godfrey Decl. ¶ 7-8, Dkt. 55-12.)

The Court finds that Plaintiffs' proposed Reminder Notice fails to distinguish between federal claims which putative collective members must opt in to the collective to pursue, and any state claims which do not require any action at this time. Defendant's Reminder Notice correctly specifies that putative collective members must opt in to participate in the lawsuit with respect to "claims asserted . . . under federal law." Accordingly, Plaintiffs are authorized to send Defendant's Reminder Notice to those putative collective members who have not responded within 30 days of the dissemination of the Revised Notice.

### E. *Consent to Sue Form*

Plaintiffs request that the Court authorize them to issue their proposed Consent to Sue Form[6] (Ex. 3 to Declaration of Anamaria Segura[7] at 5-8 (ECF pagination), Dkt. 49-3) to the putative collective members. (Motion at 1; Pls. Mem. at 16.) Defendant proposes its own consent to sue form. (Ex. D to Godfrey Decl. ("Def. Consent to Sue Form") at 2 (ECF pagination), Dkt. 55-16.)

Defendant opposes Plaintiffs' Consent to Sue Form, first, because "it conditions participation in the collective upon agreeing to be represented by Plaintiffs' counsel." (Def. Mem. at 16.) As Plaintiffs point out, however, courts in this Circuit have on multiple occasions approved consent to sue forms containing nearly identical language with respect to designating counsel. (*See* Ex. 3 to Segura Decl. at 2 (ECF pagination), Dkt. 62-4; Ex. 6 to Segura Decl. at 2 (ECF pagination), Dkt. 62-7; Ex. 7 to Segura Decl. at 2 (ECF pagination), Dkt. 62-8); *see also Rosario*, 828 F. Supp. 2d at 525-26 (approving

---

[6] The form proposed by Plaintiffs is confusingly captioned "Consent to Join" and should be changed to "Consent to Sue."
[7] The Declaration of Anamaria Segura (Dkt. 43-2) is hereinafter referred to as "Segura Decl."

consent form that acknowledged that by signing and returning the form, putative collective members agreed to be represented by plaintiffs' counsel). Moreover, the Revised Notice, which will be sent together with any consent to sue form to putative collective members, states, "If you choose to join this lawsuit, and you do not elect to obtain separate counsel, you will also be represented by [Plaintiffs' counsel]." (Revised Notice ¶ 9.) Under the heading "Should I get my own lawyer?" the Revised Notice states, "You are not required to obtain your own lawyer, although you have the right to do so at your own expense. If you do not obtain your own lawyer, Plaintiffs' counsel will represent you." (*Id.* ¶ 10.) The presence of this information in the Revised Notice clearly indicates that putative collective members may hire their own counsel should they wish. *See Siewmungal v. Nelson Mgmt. Grp. Ltd.*, No. 11-CV-5018 (BMC), 2012 WL 715973, at *4 (E.D.N.Y. Mar. 3, 2012) ("Language stating that opt-in plaintiffs have the freedom to choose their own counsel is an appropriate provision of any proposed notice"). Accordingly, the Court does not share Defendant's concern with this portion of the Consent to Sue Form.

Defendant also argues that Plaintiffs' Consent to Sue Form "goes well beyond what is necessary to accomplish its intended purpose" and is "inappropriate." (Def. Mem. at 16-17.) Defendant's proposed form, comprised of one somewhat confusing sentence, is insufficient. (*See* Def. Consent to Sue Form ("The undersigned _____, an employee or former employee, similarly situated, of defendant Ultimate Care, Inc., consents to become a party plaintiff in this action".)) Plaintiff's Consent to Sue Form contains more explanatory information and requests specific information to assist counsel in communicating with putative collective members. Thus, the Court authorizes dissemination of Plaintiff's Consent to Sue Form.

## **CONCLUSION**

Plaintiffs' motion pursuant to Section 216(b), to conditionally certify this action as a collective action, is granted. Specifically, the Court:

1. Approves conditional certification of Plaintiffs' FLSA collective action on behalf of all home health aides employed by Defendant who worked two or more 24-hour shifts in one or more weeks at any time within the three years preceding the filing of a consent to sue, and worked through meal and/or sleep periods but were not paid for the time;

2. Requires Defendant to provide Plaintiffs, within 14 days of this Order, with a complete list in electronic spreadsheet form of the first and last names, full addresses, telephone numbers, employee numbers, and NYSDOH HHA Registry numbers (if any) of all HHAs who worked for it since December 12, 2019;

3. Approves the dissemination of the Revised Notice, Consent to Sue Form, and Text Message and WhatsApp Notice, as amended in accordance with Section 2 of this Order, to HHAs who worked for Defendant on or after December 12, 2019;

4. Approves the dissemination of Defendant's Reminder Notice to those putative collective members that have not responded within 30 days of the dissemination of the Revised Notice;

5. Requires Defendant to provide the partial Social Security numbers and dates of birth for those putative collective members whose Revised Notice is returned as undeliverable; and

6. Permits all individuals similarly situated to Plaintiffs 60 days from the entry of this Order to opt in to this action.

                                                                  **SO ORDERED:**

                                                                 *Peggy Kuo*
                                                                 PEGGY KUO
                                                                 United States Magistrate Judge

Dated:  Brooklyn, New York
          March 29, 2024