UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MAYRA CRUZ and RAUL HERRERA,
individually and on behalf of all other similarly
situated persons,

                                 Plaintiffs,

      v.

ULTIMATE CARE, INC.,

                                 Defendant.

------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

22-cv-7520 (AMD) (LKE)

**LARA K. ESHKENAZI, United States Magistrate Judge:**

Plaintiffs Mayra Cruz and Raul Herrera bring this action against Defendant Ultimate Care, Inc., asserting claims under the New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA") for failure to: (1) pay overtime wages; (2) pay for all hours worked; (3) pay spread-of-hours pay; and (4) provide proper wage statements. (Pls. Mem. L. 1, ECF 160-1.) Before the Court is Plaintiffs' motion to amend the Second Amended Complaint. (ECF 160.) Defendant opposes. (ECF 162.) For the reasons stated below, the Court respectfully recommends denying Plaintiffs' motion.

**I.    BACKGROUND**

    **A.    Factual Allegations**

Plaintiffs Cruz and Herrera are home care aides formerly employed by Ultimate Care to tend to patients who require around-the-clock services. (Second Am. Compl. ¶ 27, ECF 130; Pls. Mem. L. 1.) Many of Ultimate Care's patients require care with the activities of daily life, and often require care 24 hours a day, seven days a week. (Second Am. Compl. ¶¶ 26-27.) Plaintiffs allege that they were required to follow individual care plans provided to each of Ultimate Care's

patients detailing the patient's needs and services required. (*Id.* ¶¶ 28-29, 47.) Plaintiffs allege that they were not always paid spread-of-hours pay for shifts longer than 10 hours and were not paid for all the hours worked during each 24-hour shift. (*Id.* ¶¶ 40-41.)

Plaintiffs further allege that they were not provided with eight-hour, regularly scheduled sleep periods, and when they were able to sleep, they allege that their sleep was often interrupted by the needs of their patients as demarcated on their care plans. (*Id.* ¶¶ 42-43, 49.) According to Plaintiffs, Defendant knew or should have known that Plaintiffs' sleep was interrupted, but still did not pay them for work performed during their sleep periods. (*Id.* ¶¶ 56, 66-67.) Plaintiffs allege that their meal breaks were similarly interrupted. (*Id.* ¶¶ 77, 80.)

Finally, Plaintiffs allege that Defendant failed to properly track the hours Plaintiffs worked or pay them for all hours worked. Defendant allegedly implemented a system requiring Plaintiffs to clock in and out at the beginning and end of 24-hour shifts, first via a telephone reporting system and later using an application that required Plaintiffs to input codes for each task performed during their shifts. (*Id.* ¶ 97.) Plaintiffs allege that these systems did not accurately track the hours they worked. (*Id.* ¶ 98.) Additionally, Plaintiffs allege that the Wage Statements provided by Defendant did not accurately list the number of hours they worked or wages earned and failed to include a notice detailing each wage parity supplemental benefit provided as required under New York law, negatively impacting Plaintiffs' ability to be informed of their rights and the benefits available to them. (*Id.* ¶¶ 106-109.)

**B.     Procedural History**

Plaintiff Cruz filed the original Complaint on December 12, 2022. (ECF 1.) Defendant answered on April 17, 2023. (ECF 12.) Despite the Court setting the deadline to join new parties or amend the pleadings for August 7, 2023, Plaintiffs filed the First Amended Complaint ("FAC")

2

on August 22, 2023, pursuant to a stipulation with Defendant. (ECF 41, ¶ C(1); ECF 46, 48.) The FAC added Raul Herrera as a named plaintiff, among other amendments. (ECF 48.) Soon thereafter, Plaintiffs moved for a conditional FLSA collective action certification and issuance of collective action notice, which the Court granted on March 29, 2024. (ECF 49, 80, *as modified* 84.) Defendant answered the FAC on April 9, 2024. (ECF 85.)

Plaintiffs issued notice to the FLSA collective on April 26, 2024, defined as "[a]ll current or former home health aides employed by Ultimate Care, Inc. who worked two or more 24-hour shifts in one or more weeks at any time within the three years preceding the filing of a consent to sue, and worked through meal and/or sleep periods but were not paid for the time." (Pls. Mem. L. 2.) After some discovery, the parties stipulated to allow Plaintiffs to file a Second Amended Complaint ("SAC"), this time to expressly include Personal Care Aides ("PCAs") in the definition of the FLSA collective and putative Rule 23 class. (ECF 126.) The Court so ordered the proposed stipulation, and Plaintiffs filed the SAC on July 18, 2024, before providing supplemental notice to PCAs within the FLSA collective definition. (ECF 126, 128, 130.) Defendant answered the SAC on August 21, 2024. (ECF 132.)

Plaintiffs served their first set of document requests on September 20, 2023, seeking payroll and Time and Attendance records for the putative FLSA collective and Rule 23 class. (*See* Decl. of Anamaria Segura ("Segura Decl.") ¶ 4, ECF 160-2.) Defendant did not produce these records for the putative FLSA collective until after Magistrate Judge Kuo ordered their production on April 4, 2024, and even then, Defendant's eventual May 23, 2024, production violated the parties' ESI Protocol by containing payroll records in PDF format rather than Excel format. (*Id.* ¶¶ 5, 6, 7; Min. Order for April 4, 2024, Proceedings.) Defendant completed production of the FLSA collective's payroll and Time and Attendance data in the agreed upon format on July 29, 2024. (Segura Decl.

3

¶¶ 11, 13.) As of that date, Plaintiffs were in possession of complete payroll records, in multiple formats, for all members of the collective and all opt-in plaintiffs for the entirety of their employment with Ultimate Care. (Decl. of Matthew K. Parker ("Parker Decl.") ¶ 45, ECF 162-1.)

Upon Plaintiffs' counsel's review of payroll and Time and Attendance records for the FLSA collective, counsel alleges that they identified "numerous instances where it appeared that home care aides were paid significantly later than the weekly payday apparently set by Ultimate Care." (Pls. Mem. L. 4; Segura Decl. ¶¶ 14-15.) As such, Plaintiffs included their intention to bring late payment claims in their Rule 26(e) supplemental disclosures served on Defendant on January 31, 2025. (Segura Decl. ¶ 28, Ex. 7 ¶¶ 3(d), (e), ECF 160-9.) Plaintiffs allege that they informed Defendant of their intent to amend the complaint on March 12, 2025, and asked Defendant to provide its position. (Segura Decl. ¶¶ 31-34.) Defendant eventually requested and received a copy of the proposed Third Amended Complaint ("TAC") on May 9, 2025. (*Id.* ¶¶ 35-36.)

Defendant did not take a position on the TAC until nearly six months later, when Defendant confirmed that it would not consent. (*Id.* ¶ 46.) Plaintiffs now bring this Motion to Amend, nearly two-and-a-half years after the original August 7, 2023, deadline to amend the pleadings.

## II.     **LEGAL STANDARD**

"The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). In the beginning of a litigation, a plaintiff is free to amend its pleading as of right without court permission. Fed. R. Civ. P. 15(a)(1) (specifying instances where a party may amend its pleading "as a matter of course"). When this initial period ends, "the plaintiff must move the court for leave to amend" pursuant to Rule 15(a)(2). *Sacerdote*, 9 F.4th at 115; Fed R. Civ. P.

4

15(a)(2). The Rule 15(a)(2) standard is "permissive" and the only "grounds on which denial of leave to amend has long been held proper" are upon a showing of "undue delay, bad faith, dilatory motive, [or] futility." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Rule 15(a)(2)'s "liberal" amendment period ends when "the district court issues a scheduling order setting a date after which no amendment will be permitted." *Sacerdote*, 9 F. 4th at 115. A party may seek to amend its pleading after the deadline set in the scheduling order but may only do so upon a showing of Rule 16(b)(4)'s stricter "good cause" standard. Fed R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Lingmain Yang v. Everyday Beauty Amore Inc.*, No. 18-cv-729 (BMC), 2018 WL 47833968, at *5 (E.D.N.Y. Oct. 3, 2018) (stating the Rule 16(b)(4) good cause standard "offer[s] a measure of certainty in pretrial proceedings" (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000)).

Rule 16(b)(4)'s good cause standard applies only when the scheduling order sets a date after which all amendments are prohibited. *Sacerdote*, 9 F.4th at 115 (holding district court erred in applying Rule 16(b)(4)'s "good cause standard" where the scheduling order did not set an "expiration date after which all amendments were prohibited[.]"). Where a scheduling order does not specify a date after which amendments with leave of court are prohibited, the Court may "balance the 'good cause' standard in Rule 16(b) with the more lenient standards of Rule 15(a)." *Demopoulos v. United Metro Energy Corp.*, 19-cv-05289 (FB) (RLM), 2022 WL 2390986, at *1 (E.D.N.Y. July 1, 2022) (citing *Parker*, 204 F.3d at 340).

Under Rule 16(b)(4)'s good cause standard, the moving party must demonstrate diligence when alleging new facts and cannot bring new claims under the same information available at the time of filing. *Compare Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)

5

(holding that where the amended complaint alleged new facts and cured the "defective pleading," the good cause standard was met), *with Parker*, 204 F.3d at 341 (finding that where the plaintiff already "had all the information necessary to support" his new claim, good cause had not been shown and leave to amend would not be proper), *and Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (finding that where plaintiffs had "delayed more than one year before seeking to amend their complaint," discovery was closed, and a motion for summary judgment had been filed, the good cause standard was not met), *with Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-cv-5023 (CBA) (RLM), 2010 WL 1257803, at *9-11 (E.D.N.Y. Mar. 26, 2010) (finding that three months following additional discovery did not amount to extreme delay or lack of diligence, and good cause was established).

### III.  DISCUSSION

To determine whether the Rule 15 or Rule 16 standard governs, the Court must determine "the meaning suggested by the plain language of [the] court order[.]" *Sacerdote*, 9 F.4th at 115. Here, the Court entered a Scheduling Order on July 17, 2023, setting a discovery schedule and a deadline of August 7, 2023, for filing any motion to join new parties or amend. (7/17/2023 Min. Entry & Order, ECF 41.) The plain language of the Court's July 17, 2023, Scheduling Order thus set August 7, 2023, as an "expiration date after which all amendments [are] prohibited[.]" *Sacerdote*, 9 F.4th at 115.

Defendant correctly notes that the parties have sought and received multiple extensions of the discovery deadline without extending the deadline to amend the pleadings. (Mem. Opp. 11.) Indeed, there were three different amendments to the Scheduling Order, each without any requests to extend the deadline to amend the pleadings. (ECF 124, 152, 158.) Plaintiffs allege that, because they "had not received essential payroll or Time and Attendance data for the FLSA collective

6

before [the August 7, 2023,] deadline, it would have been impossible for Plaintiffs to identify and investigate the late payment violations prior to the date, let alone seek to amend the complaint on that basis." (Pls. Mem. L. 10.) Plaintiffs offer no explanation, however, for why they never sought an extension of the deadline to amend the pleadings. As there is no dispute that the deadline to amend pleadings was not extended, and that the deadline has long since passed, Plaintiffs must meet Rule 16(b)'s good cause standard to prevail on their motion.

Under the Rule 16(b) standard, the moving party must demonstrate diligence when alleging new facts and cannot bring new claims under the same information available at the time of filing. *Kassner*, 496 F.3d at 243. The purpose of Rule 16(b) is "to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker*, 204 F.3d at 339–40 (internal quotation marks omitted) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 amendment, discussion of subsection (b)). A party "fails to show good cause when the proposed amendment rests on information 'that the party knew or should have known in advance of the deadline.'" *Sanossian v. Valley Stream Cent. High Sch. Dist.*, No. 16-cv-4697 (JMA) (AKT), 2020 WL 6385602, at *5, 8 (E.D.N.Y. Oct. 29, 2020) (citation omitted) (finding that where a plaintiff "discovered the information forming the basis of her . . . [claim] two months after the deadline to amend" and advised the Court under a month later, the good cause standard of diligence was met); *George & Co. LLC v. Spin Master Corp.*, No. 19-cv-4391 (RPK) (SJB), 2020 WL 3865098, at *6 (E.D.N.Y. July 7, 2020) (finding that where the plaintiff was aware of the facts forming the basis of the amended claims, there was "no good cause to excuse the three-month delay").

Plaintiffs fail to demonstrate the required diligence. First, Plaintiffs' new late payment claims are based on information that was already in Plaintiffs' possession. An examination of

7

Plaintiffs' proposed TAC reveals that the crux of their new claims is the allegation that Defendants regularly paid Plaintiffs "wages later than seven calendar days after the end of the week in which [their] wages were earned, and at times, 14 or more days later than the end of the week in which [their] wages were earned." (Proposed TAC ¶¶ 41, 45, ECF 160-3.) It is not apparent to the Court why Plaintiffs would not have been aware that they were receiving late payments at the time the original Complaint in this action was filed. The Court raised this issue at oral argument on this motion, and Plaintiffs' counsel stated that they "work with a data analyst who…needed to look at the data to see i[f] this [is] even worth bringing a claim on," and that they "waited …, and perhaps [they] shouldn't have, but [they] waited until [they] had the full collective wide data." (Nov. 12, 2025, Tr. Proceedings, 35:8-10, 35:17-18, ECF 177.) This vague explanation does little to illuminate why the late-payment claims could not have been brought earlier, as presumably Plaintiffs would have realized they were being paid long after their paychecks were due even in the absence of a data analyst's calculations. Moreover, Plaintiffs fail to explain why they needed "full collective wide data" for this particular claim, but not for all the other claims alleged prior to receiving that data. In short, Plaintiffs' stated reasons for the delay in pursuing the late-payment claims do not demonstrate the diligence required to meet the Rule 16(b) standard.

Even if the Court accepts that Plaintiffs needed access to more data before they could pursue the late-payment claims, Plaintiffs and Defendant agree that Plaintiffs had possession of payroll and Time and Attendance records in searchable Excel format by July 29, 2024. (Pls. Mem. L. 3; Mem. Opp. 12.) Moreover, Plaintiffs received the requested payroll and Time and Attendance records in PDF format for the Rule 23 class and the named plaintiffs by April 4, 2024, and for the FLSA collective on May 23, 2024. (Pls. Mem. L. 3.) Indeed, by the time Plaintiffs filed the SAC, on July 18, 2024, they already had complete payroll and Time and Attendance records for over

8

333 individual employees but still failed to assert any late payment claims. (Mem. Opp. 12; ECF 130.) Had Plaintiffs exercised proper diligence, they would at least have seen enough by the time they filed their SAC to know that they needed more time to investigate and would have requested that the deadline to amend the pleadings be extended.

Finally, even if Plaintiffs could not recall being paid late repeatedly throughout the course of their employment by Defendants, and accepting Plaintiffs' counsel's representation that the PDF payroll and Time and Attendants records were difficult to interpret and search, Plaintiffs have known, or have had the information necessary to know, about the evidence underlying the claims they now seek to assert since at least July 29, 2024. Indeed, Plaintiffs appeared to know by January 31, 2025, that they intended to assert late payment claims as they disclosed that intention in supplemental disclosures. (Segura Decl. ¶ 28, Ex 7, ¶ 3(d), (e)). Plaintiffs offer no explanation, however, as to why they waited until March 12, 2025, to first raise the issue of filing an amended complaint with Defendant's counsel, and until May 9, 2025, to provide Defendant's counsel with a proposed TAC. (Segura Decl. ¶¶ 31-36.) While Plaintiffs blame Defendant's counsel for not requesting a copy of the TAC until April 11, 2025, it is not clear to the Court why Plaintiffs' counsel waited for such a request before providing it to counsel since Plaintiffs were seeking Defendant's consent for the filing of the amended complaint. Plaintiffs also fail to explain why it took them a month from April 11, 2025, when counsel for Defendant requested a copy of the proposed amended pleading, to May 9, 2025, to provide Defendant with the proposed amended complaint.

In sum, putting aside whether Plaintiffs knew or should have known about these claims at the time of filing their original complaint—or at least by July 2024 when they had in their possession all of the relevant Time and Attendance records—the delay from January 31, 2025,

9

when Plaintiffs indicated in their supplemental disclosures their intention to amend the complaint, to May 9, 2025, when Plaintiffs finally provided Defendant with a proposed TAC, fails to meet the diligence requirement of Rule 16(b). *See Perfect Pear Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457, 459 (S.D.N.Y. 2012) (finding that plaintiff had not shown good cause under Rule 16 for waiting to act on information that was clearly in its possession some 10 months earlier).

## IV.     CONCLUSION

Accordingly, the Court respectfully recommends denying Plaintiffs' Motion for Leave to Amend. A copy of this Report and Recommendation is being served on all parties via ECF. Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Donnelly. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

SO ORDERED.

Dated: Brooklyn, New York
           December 31, 2025

*Lara K. Eshkenazi*
LARA K. ESHKENAZI
United States Magistrate Judge